Derbigny, J.
delivered the opinion of the court. The plaintiff and appellant built a house for Henry Jacob, one of the defendants. Jacob, not being able to pay him agreed to let him collect the rents of the house until the ex-tinguishment of the debt. The appellant did actually obtain part of his payment in that manner; and, being about absenting himself, left the house under the care of an agent authorized *633 to receive the rents. While he was absent, Prampin, a creditor of Jacob, caused the house to be seized and sold by the sheriff, and received the purchase money. The plaintiff, on his return, instituted the present suit against Jacob, and Madam Souzet and her husband, the now occupiers of the premises, praying that Jacob might be condemned to pay him the amount of his claim, and that the other parties might hear it decreed that his said claim is privileged upon the house in question. Judgment was rendered in the lower court against Jacob, but in favor of the other defendants.
East'nDistrict.
July, 1818.
The defence of appellees rests upon several grounds; the first of which in order is that the appellant is not entitled to have and maintain his action against them. The objection which they raise, under that part of their answer, is that, before the plaintiff could sue them, he ought to have obtained judgment against his debtor, Jacob, as required in such cases by our statute. Civ. Code, 460, art. 43. The article relied on does not seem, however, to support the defendant in that objection. It goes no further than providing that the creditor, whose pledge is in the hands of a third posses sor, shall not cause it to be sold, without hav- ing previously obtained judgment against his East'n *634 principal debtor; but it does not say that the third possessor shall not be called to hear that judgment; and this mode of proceeding, being clearly more advantageous to the third possessor, to whom it gives an opportunity of debating the claim of the creditor and contradicting his evidence, we see no good reason why it should not be admitted.
But, under that part of the answer of the ap-pellees, another objection arises, which this court must take notice of, and which goes to defeat this action. The appellees are not third-possessors, who have bought from a debtor pro. perty incumbered with a mortgage or privilege. They are purchasers of property sold under execution, at the suit of a creditor of the mortgagor. The creditor, whose pledge is seized and offered for sale at the suit of another creditor, would not, if present, have a right to oppose that sale, and to preserve his pledge in kind, until he should please to have it sold himself. His right is that of being paid out of the proceeds of sale, in preference to the seizing creditor, if his claim is of a higher order or anterior date. Curia Philipica, tercero opositor, n. 9. As a consequence of that principle, if the privileged creditor was absent, and had no knowledge of the sale, his first course is *635 against the seizing creditor, to make him refund the proceeds, before he can molest the purchaser, and cause the property again to be seized and sold. Febrero, de juicios, 3, 2, n. 341. This is the course pointed out by justice a,nd equity, and which this court think themselves bound to maintain.
Carleton for the plaintiff, Hennen for the defendant.
This view of the case precludes the necessity of examining the other points at issue between the parties.
It is, therefore, ordered, adjudged and decreed, that the judgment of the district court be affirmed, with costs.
Workman, on a motion for a re-hearing. The appellees, says the court, are, not third possessors who have bought from a debtor encumbered property-they are purchasers of property sold under execution at the suit of a creditor of the mortgager.
These persons appear to me to be third pos sessors, in the strictest sense of the law. What meaning can the expression third possessors have, if not that of possessors distinct from *636 either of the two parties, debtor and creditor? In what do the purchasers from a debtor himself, differ from those who purchase at a sheriff's sale? Is not the sheriff on such occasions a mere agent or minister of the law? Is it not the debtor's right, and that right only, which he is authorized to dispose of? The plain, obvious, lexicographic import of the words third possessor is any lawful possessor other than the debtor or creditor in question.
The passage cited from the Curia Philipica does not tend to destroy or diminish my client's right. The article referred to says-" Si el accreedor posterior executante se opone, pidi-endo solo se le entreguen como tal los bienes executados per derecho de prenda de su deuda, esta oposicion no impide la execucion. Y asi sin embargo de ella, se ha de continuar, y vender los bienes, y de su valor y precio pagar al anterior, y de lo que restare, al posterior que executô." All this is very satisfactory. It is not pretended, that the privilege or mortgage creditor can prevent the sale by a subseqent creditor, and preserve his pledge in kind, until he should please to have it sold himself. Such sales may always take place, subject to the an- tecedent incumbrance; and such sales will clear off the incumbrances, provided payment be be *637 made to the antecedent creditors. This payment, the court will perceive, is the essential and indispensible circumstance to give validity to the proceedings. The law does not say that the anterior creditor shall have a mere right to payment a good cause of action against the subsequent creditor, who receives the proceeds of the thing sold. It says he shall be paid. His right to the proceeds is of the same kind as that which, previous to the sale, he had to the pledge itself. Now, it seems most evident, that all this doctrine contemplates the case of a sale made when the anterior creditor is present, and when the proceeds of the sale are in the hands of justice. The object of the law is to secure the right of that creditor not to defeat it. Therefore, the doctrine cannot be applicable, when the proceeds of the sale have got into the possession of to executing creditor, otherwise the privilege would be annihilated. The privileged creditor would have lost his pledge; and, being reduced to the rank of a mere simple contract or chirographic creditor, he would be left to his remedy against the person, or the personal property, of the subsequent executing creditor. For the monies once paid into the hands of the latter, how could they be fixed how bound by any privilege whatever? How *638 could they be traced-by what sign or remark identified? Thus, according to the decision of the court, the rights of any privilege, or mortgage creditor might be defeated, and his lien on the pledge wholly destroyed by the contrivance, even of his debtor. This debtor would only have to grant a new mortgage to some friend or accomplice, and procure this new crditor to sue for an order of seizure and sale, which not being objected to, according to the supposition of collusion between the parties, would take place in ten days ; at the end of which period, the confederates might share the spoil, and leave the antecedent mortgagees to seek their remedy as they might. To sue persons who might have absconded from the state, or who, if they remained in it, might entertain their creditors with a cession de biéns, and settle all accounts according to the provisions of the act of insolvency.
If the anterior creditors were present, and in the habit of perusing the advertisements in all the daily newspapers, they might, indeed, defeat this goodly project, by interposing their claims. But who thinks, or who ever thought it necessary to be thus perpetually on the look out to preserve a privilege or a mortgage? Does not every mortgage creditor deem it sufficient *639 that his hypothecation is recorded, and that it is thus completely secured against the legerdemain of chicane or fraud?
If the creditor on the spot would have some chance of security, the absent creditor would have none at all.
Publish this doctrine tomorrow, and in less than a twelvemonth, I am persuaded, we shall find the rights of mortgage creditors, and the credit of the state itself, materially injured by it.
The texts, on which the commentary above mentioned of the Curia Philipica is founded, put the question out of all doubt. The 5th part. title 13, law the 38th declares that the right of pledge is extinguished by paying the creditor, or depositing the sum due for him, in case he refuses the payment.
All these provisions arise out of the follow-in~ decision of the Roman civil law. Quod si res sit pignorata, que pignori capta est, viden-dum est n sic distrahi possit, ut dimisso credi-tore, superfluum in causam judicati converta-tur. Et quanquam non cogatur creditor rem, quem pignori accepit, distrahere, tamen injudi- cati executionem servatur, ut si emptorem in- venerit res que capta est, qui dimisso priore creditore, superfluum solvere sit paratus, ad- mittenda sit hujus quoque rei distractio. *640 videtur deterior conditio creditoris fieri suum consecuture, nec prius jus pignoris dimissuri, quam si ei fuerit satisdatum. Dig. 42, 1, 15, §. 5. Here it is seen that thw payment of the prior creditor is the condition precedent, the sine qua non of the execution. The subsequent creditor is not entitled to the proceeds of the pledge, but only to the overplus, remaining after the anterior creditor has been satisfied.
And let it be particularly remarked, if the court please, that all the authoritiea referred to, contemplate a pledge, not a mortgage,-pignus, not hypotheca, a thing in the actual possession of the creditor, not a thing possessed by others, in which he has only an invisible, incorporeal right. To sell this pledge without his know- ledge, is impossible. And when it is sold by judicial authority, he may retain or demand the amount for which it may have been pledged to him. Very different is the situation of a mortgage or privilege. The property affected by the one or the other, may be disposed of, as in the instance now before the court, without the creditor's consent, or knowledge; and the whole proceeds removed or dissipated before it could be possible for him to secure, or even to claim any part of them.
The articles of the civil code, already noted *641 at the trial of the cause, secure the privilege creditor, whatever may have been the Spanish law on the subject. If there is any discrepancy between these systems of legislation, our code must of course prevail.
Lastly, the determination of the court in the case of Sadler vs. Lafon, referred to and explained at the first hearing, is in strict conformity to these laws, and was supposes to have set all these questions at rest. 4 Marting 477.
The leciston of the present cqe is believed to admit principles unknown to our ancient law, principles adverse to those of our civil code, contrary to uniform and approved practice, and dangerous to the rights of all privileged and mortgage creditors. A rehearing of the cause is therefore respectfully and earnestly requested.
No re-hearing was granted.