### KENNER & ALL. vs. THEIR CREDITORS.

APPEAL from the court for the parish and city of New-Orleans.

*If on a comparison of the day of acceptance, the day designated for payment, and the tenor of the bill, it appears the days of grace were included with those of sight, between the day of acceptance and that designated for payment, that day is the peremptory one of payment, and protest on it is legal.*

*If the acceptance be not dated, parol evidence is admissible to shew on what day it was made.*

MARTIN, J. delivered the opinion of the court. The President, Directors and company of the Bank of the United States and others, complain of the judgment of the parish which denies them, respectively, a place on the tableau of distribution, among the creditors of the insolvents, as holders of protested bills of the latter.

Their pretensions were opposed as those of *Hicks, Lawrence & Co.* whose case was determined last week, on the grounds that the acceptances were not according to the tenor of the bills and the protests were made too soon. —*Vol.* 7, 540.

A material difference, and the only one, between these cases and the former, is that, in this the acceptance had a date, in those, the acceptances were without any.

But the appellants' counsel urge, that they proved, by witnesses, in each case, the day of acceptance, and from a comparison of the tenor of the bill, the date of the acceptance, and the day designated for payment, it clearly appears that both the sixty days of sight, and the three days of grace, were included in the period between the acceptance and the day expressly designated as that of payment, and the conclusion is, that the latter is the peremptory day of payment, and days of grace are not to be added thereto.

Eastern Dist.
*May*, 1829.

KENNER
& AL.
*vs.*
their credit's.

They say there is no rule of law, that prohibits the drawer or acceptor, from adding the days of grace to those of sight, and including the whole between the day of acceptance and that which is designated for payment. No such rule has been shown by the counsel of the appellees, who has rested all his objections on the general principle, according to which, days of grace are allowed on all acceptances, according to the tenor of the bill. Giving this principle its full effect, it does not invalidate, an acceptance, in which the days of grace have been included; because, in such cases, the days of grace, which the law adds to those

Eastern Dist.
*May*, 1829.

KENNER
& AL.
*vs.*
their credit's.

of sight, are in fact added; because the day designated for payment, is the last of the days of grace, which the law would add, if the acceptance was absolute, by the mere signature of the acceptor and date under the word accepted.

It cannot ever be illegal for the parties to *express* in their contracts the obligations, which the law would *imply*, if they were not expressed—where certain consequences legally *result* from an engagement of a particular kind, those, who enter into it, may state them at full length; consequently, when the law has provided that days of grace shall be superadded to those of sight, and the bill shall not be payable before the expiration of the days of grace, it follows that a bill at sixty days sight, being payable on the sixty-third day after the acceptance, the acceptor and holder may well agree that the former shall pay it on that day—because that is what the law would *imply*, had not the parties *expressed* it. In such a case, the days of grace, being evidently included, the acceptance is perfectly legal; the acceptor cannot require that others be superadded.

We are unable to find, in such an acceptance, any ground, on which the drawers or endorsers might contend they were discharged. The holder has fully complied with the engagement he took towards them, of procuring such an acceptance, as would bind the drawee to pay the bill, according to its tenor, on the sixty-third day after presentation. The acceptance has the same force and obligation —whether made in the most common way, by the word "accepted" with a date—the words accepted to pay, at the expiration of sixty days—at the expiration of the days of sight—at the expiration of sixty-three days, or of the days of sight and those of grace.

The difficulty, if there be any, consists in ascertaining the intention of the parties.— When that is done, the legal consequence necessarily follows.

The counsel for the appellees, has, however, strenuously contended that parol evidence of the date of the acceptance was inadmissible, and they claim the benefit of a bill of exceptions, which they took to the opinion of the parish court, by which it was admitted. The authorities they rely on are, *Phillip's evidence*, 423,

Eastern Dist.
*May*, 1829,

KENNER
& AL.
*vs.*
their credis's.

Eastern Dist.
May, 1829.

KENNER
& AL.
vs.
their credit's.

*ch.* 10, § 2, 8. *Johnson,* 298. *Norris' Peake,* 119. 3 *Starkie on evidence,* 995, 999, 2 *id.* 579. *Cowen,* 750. *Johnson,* 146. 2 *Bosanquet & Puller,* 509. 3 *Campbell,* 56. 1 *Taunton,* 115, 347. *Chitty com. law,* 142. 1 *Chitty on contracts,* 22. 1 *Mass. reports* 27. 12 *Id.* 92. 8 *Taunton,* 98. 8 *Eng. com. law reports* 468.

One of the writers, cited by the appellee's counsel, *Starkie,* lays it down as a general principle that "evidence is admissible, that a deed was executed or *a bill of exchange made* at a time different from the date."

The cases, stated by *Starkie,* are *Hall* vs *Casenove,* 477, 3 *Levins,* 348, *Giles* vs. *Meeks; Addison,* 384, *Gress & al.* vs. *Odenhemer;* 4 *Yates,* 218, *Fox's lesee* vs. *Palmer & al.* 2 *Dallas,* 214. But on examination we find that they support the position, in regard to deeds only. 3 *Starkie,* 46.

The same author also lays it down, that parol evidence may be received, that a party, in whose name a contract has been made for goods, was but the agent of another. *Id.*

In the case of *Krumbhaar* vs. *Ludeling,* 3 *Martin,* 640, this court held that parol evi-

dence was admissible, to shew that the drawer Eastern Dist,
May, 1829.

KENNER
& AL.
vs.
their credit's.
of a bill, drew it as agent.

The Supreme Court of the United States has held that parol evidence was admissible, that a check (on the face of which it was doubtful whether the person, who drew it, acted in his own right or as cashier of the bank,) was drawn on account of the bank. **5** *Wheaton* 286.

And in a very recent case, the Bank of the Metropolis vs. Brent's executors, 1 *Peters* 89, the same court held that parol evidence was admissible of an agreement relative to the place, where payment of the note was to be demanded. In that case, it was contended the testimony ought not to be admitted, because it was an attempt to vary, by parol proof, a written agreement. Chief Justice Marshall, who delivered the opinion of the court, said: "this is not an attempt to vary a written agreement. The place of demand is not expressed on the face of the note, and the necessity of a demand on the person, where the parties are silent, is an inference of law, which is drawn only when they are silent. A parol agreement puts an end to this inference, and dispenses

Eastern Dist.
May, 1829.

KENNER
& AL.
vs.
their credit's.
with a personal demand. The parties consent to a demand, at a stipulated place, instead of a demand on the person or maker, and this does not alter the instrument, so far as it goes, but supplies extrinsic circumstances, which the parties are at liberty to supply."

From this authority it follows, that the legal implication, resulting from an instrument, may be rebutted by parol evidence of an agreement to the contrary.

The legal meaning of an instrument, may be explained by evidence of the time and place of its execution.

A contract of endorsement is at present, ordinarily entered into by the mere signature of the party, on the back of the bill. Should the endorser be sued, the measure of damages must be sought, in the laws of the place in which he contracted; and this can only be shown by parol.

On a note, payable on a given day, the number of days of grace and the rate of interest must be sought in the law of the place, in which it is subscribed or made payable—if the place is not stated on the face of the note, parol evidence is certainly admissible.

Eastern Dist
*May*, 1829.

KENNER
& AL.
*vs.*
their credit's

Parol proof, not only of the place, but of the time an agreement was entered into, is some times important. In such a case, says Starkie, (*loco citato*) "even in the case of records, which are conclusive, as far as regards their substance, averments and proofs may be received to *contradict* them, as to *time* and *place*."

On a bill or note, payable within a limited time after date, when there is no date, the time is to be computed, from the day it issued. *Bailey on bills*, 154.

Where an award, which directed an act to be done, within a certain number of days, had no date, the court held the time was to be computed from the day of delivery.

In both these cases, the time when the bill issued, and the award was delivered, was necessarily to be proven by parol evidence.

If it be argued that in the acceptances, under consideration, the day of payment was written, and therefore there was no necessity to resort to parol proof to ascertain it—the answer is, that a circumstance occurred from which it necessarily results, that the day designated was the peremptory day of payment,

Eastern Dist.
May, 1829.

KENNER
& AL.
vs.
their credit's.

and not that from which the days of grace were to be reckoned; a circumstance which destroyed the implied right, of the acceptor to further delay, in the same manner, as the parol agreement, in the case of the *Bank of the Metropolis* vs. *Brent's executors*, destroyed the implied obligation of the Bank making a demand from the person of the maker.

The inclusion of the days of grace and the agreement that the demand should be made at a particular place, are both circumstances, proof of which, in the language of Judge Marshall, "does not alter the instrument, so far as it goes, but supplies extrinsic circumstances, which the parties are at liberty to supply."

If it be objected that, in the cases first cited, the evidence was received between the parties, and in that before the Supreme Court of the United States, the endorser was presumed to be a party to the agreement, this circumstance in our opinion, cannot vary the right to introduce the parol proof, in the cases now before us. The undertaking of the holder, with the drawer and endorser, is that the former will require the drawee to bind himself to pay the bill, according to its tenor—whatever is evi-

dence against the drawee, that he had done so, will be evidence between the holder and drawer and previous endorsers, that the drawee has undergone all the obligations of an acceptor—whether the evidence when received shows such an obligation, on the part of the acceptor, as will bind the drawer and endorser, goes to the effect of the proof, and not to its admissibility.

Eastern Dist
*May*, 1829.

KENNER
& AL.
*vs.*
their credit's.

We conclude that parol evidence of the *time* of acceptance was properly received.

On the opposition of *Hicks, Lawrence &
Co.* we held that, when from the comparison of the tenor of the bill, the written date of the acceptance, and the day designated for payment, it clearly appeared that the period between the day of acceptance and that designated for payment, included both the days of sight and those of grace, we would conclude that the day designated, was the peremptory day of payment, and no additional days of grace were to be claimed or allowed.

That protest on that day was *timely.*

The appellants, however, have urged that, according to mercantile usage, in England, the day nominally designated for payment, in

Eastern Dist. an acceptance without a date, is the peremp-
*May*, 1829, tory day.

KENNER
& AL.
*vs.*
their credis's.

*Fairweather*, Cashier of the Bank of *Lay-land & Bullers*, has deposed that an accep-tance, without a date, to pay on a day ex-pressly designated, is not usual, but is occa-sionally resorted to.   It is usual in such cases to include the days of grace, and the day de-signated is the third of these.   He had four bills accepted in this manner; one of them was discounted by the Bank of England; three of them passed through the hands of Bankers in London.   By the usage and customs of merchants in England, such a bill is payable on the day designated.

*Burrell* has deposed that an acceptance without a date, to pay on a day expressly de-signated, is not customary, but when adopted, the day designated is usually the last of those of grace, and by the usage of merchants, pay-ment must be demanded on that day.

*Frodsham* deposed that in such an accep-tance the day designated is usually the sixty-third, the days of grace included.   This form of acceptance is used by several houses.

*Ford* deposed he has used the same form

for several years—without any objection being
made till lately, in consequence of doubts in the United States. The day designated is usu-
ally the peremptory day, and the protest is made on it.

*Hooth* deposed he has always accepted in this manner, for sixteen years, without any objection being ever made. His acceptances have passed through several great houses. The usage has prevailed, ever since he is in business.

*Tabor* deposed he has been forty years in business as a banker, and has never known any objections to be made to this form of acceptance. It is not unfrequent: a vast number of bills thus accepted, have passed through his hands.

*Duncan*, one of the drawees, deposed the bills are accepted according to their tenor, and law—the days of grace are included. The form of acceptance is the usual one of the drawees.

*Horstman*, *Wilkins*, *Drouet* and *Wilson* deposed the form is used by many houses.

The same facts are substantially deposed by several other witnesses introduced by the appellants.

Eastern Dist
*May*, 1829.

KENNER
& AL.
*vs.*
their credit's.

The appellees introduced the following witnesses:

*Hall* deposed there is no general usage, as to protesting a bill at sixty days sight, accepted to be paid on a day designated, without the acceptance being dated. Very few houses use that form of acceptance. He considers it as altogether irregular, and would protest the bill on the day designated, and afterwards *as a matter of precaution*—three days after; particularly, if the acceptor urged he should have days of grace. He would object to receive such an acceptance, for want of a date. The house of *A. Haywood & Sons* have refused to receive, and have sent back bills thus accepted. Since objections have been made, several houses have adopted the form of acceptance with a date.

*Henderson* deposed that there is no common usage, regulating the protest of a bill, accepted on a designated day, without a date. The acceptance is irregular; he would protest three days after the designated day.

*Jordan* deposed the acceptance without a date would be irregular, and he would be at a loss about protesting, unless he could prevail

on the acceptor to add a date. The sixty-third Eastern Dist.
*May*, 1829.

KENNER
& AL.
*vs.*
their credit's day after presentation is the day to protest for non-payment; but by no means not without regard to the form of acceptance; because the commercial usage of England requires a date to the acceptance.

*Anderson* deposed he never saw such an acceptance, and would not take it, because it is liable to many objections. If he was holder of a bill, thus accepted, he would protest on the day designated. The sixty-third day is the proper day for protesting, without regard to the form of acceptance; provided the acceptance be dated; the date is essential in common usage.

*Binn* deposed that, presuming the day designated was the sixty-third, he would protest on that day. The proper day of protest is the sixty-third after *sight*, but not without regard to the form of acceptance. He considers the acceptance imperfect, without a date.

*Ireland* deposed the acceptance would be irregular, and contrary to commercial usage; but if the bill have been accepted sixty-three days before the day designated, the protest should be on that day. The only proper day of pro-

Eastern Dist.
*May*, 1829.

KENNER
& AL.
*vs.*
their credit's.

test is the sixty-third after presentation; unless by a special agreement, between the drawee and holder; but such an agreement would discharge the drawer and endorsers.

*Luke* deposed an acceptance, without a date, is not customary; but if the day designated was really the sixty-third from the acceptance, the protest should be on that day. Common usage requires a date.

*Highfield* deposed that, presuming the day designated was the sixty-third from the acceptance, he would protest on it. The date is necessary.

*Orford* deposed the acceptance is irregular. He would think the days of grace were included, and protest, on the day designated.

The result of the testimony offered by the appellants is that, according to commercial usage, a bill at sixty days, accepted to be paid on a designated day, without a date to the acceptance, is payable on that day, without the addition of any days of grace.

The same result is given by the examination of appellee's witnesses. From the nine whom they have produced five, Hall, Henderson, Binn, Highfield and Orford depose they would pro-

Eastern Dist.
*May* 1829.

KENNER
& AL.
*vs.*
their credit's.

test such bill on the day designated in the acceptance, without giving any days of grace— this is to say, that day is the peremptory one, or in other words, the bill is accepted, according to its tenor.

Two of them, Ireland and Luke, deposed that, if the day designated be actually the sixty-third day from the acceptance, then it is the peremptory day—then is the bill accepted according to its tenor.

One witness only, Henderson, thinks the day designated is that, from which those of grace are to be reckoned.

Jordan expresses no opinion.

We cannot resist the impression, left on our minds by the testimony, that, according to usage in England, the bills were accepted, and the acceptors took the engagement of paying them on the day designated in the acceptance, and that protest on that day was regular.

On principles, if we were without other testimony, than that which ascertains the day of acceptance, it would be impossible to distinguish the case of the appellants from that of *Hicks, Lawrance & Co.* Whether the day

Eastern Dist.
*May*, 1829.

KENNER
& AL.
*vs.*
their credit's.
of acceptance be written by the acceptor, at the foot of the acceptance, admitted by all parties, or ascertained by legal evidence, if it clearly appears that both the days of sight and those of grace, have been computed and included between that of acceptance, and that designated as the day of payment, the legal consequence must follow. The designated day is peremptory; days of grace cannot be claimed.

Lastly, it has been urged, with great force, that such acceptances are bad, because they leave the day, on which the bill is to be presented for payment, in uncertainty—that the holder cannot know when to protest. Therefore such a mode of acceptance must be proscribed, as leading to confusion and injury to the parties.

The objection may be considered, in relato those who were parties to the bill, at the period of acceptance, and those who became so after. The former can only object, when they are resorted to, that the bill was dishonored; that it was not duly protested; that they were not duly notified of the dishonor. Now, if the acceptor had a right to include the days of grace, in the period between the acceptance

Eastern Dist.
*May,* 1829.

KENNER
& AL.
*vs.*
their credit's.

and the day designated, the bill was duly honored. As to the uncertainty, appearing on the face of the bill, no authority has been shewn to induce a belief that the drawer, or previous endorsers may claim their discharge, because the day of payment, on the face of the bill is uncertain; *id certum est quod certum reddi potest.* If the objection could prevail, what would become of verbal acceptances, or parol promises to accept, anterior to the drawing? In such cases, the day of presentation must be established by parol evidence, as nothing, on the face of the bill, shews when it becomes payable.

As to those, who may receive the bill *after* such an acceptance, with such an ambiguity on its face, and negotiate it in this state, they have no cause of complaint. No one forced them to receive such a bill, and they took it with the risk, if any, of the uncertainty of the acceptance. *Volenti non fit injuria.*

We think the parish judge erred in erasing the names of the appellants from the tableau of distribution.

It is therefore ordered, adjudged and decreed, that the judgment of the parish court

Eastern Dist.
May, 1829.

KENNER
& AL.
vs.
their credit's.
be annulled, avoided and reversed, and it is ordered, adjudged and decreed that the appellants be restored, on the tableau, as creditors of the insolvents for the amount of their respective bills, damages and costs resulting from the protests; the appellees paying costs in both courts.

*Livermore & Smith* for plaintiffs—*Mazureau & Hennen* for defendants.