## WOLFE ET AL *vs.* JEWETT.

APPEAL FROM THE COURT OF THE SIXTH JUDICIAL DISTRICT, THE JUDGE THEREOF PRESIDING.

The party sought to be charged, may show that he acted as agent in drawing the bill sued on, and in this respect is to be considered in the same light as showing a want of consideration, and in either case he is not liable.

A person may draw as agent upon his principal for a debt not personal to himself, but due by the principal to the payees, without expressing the agency on the face of the bill.

WESTERN DIST.   A bill or note must be presented for acceptance, at the place specified on its
October, 1836.   face, and duly protested for non-acceptance, in case no one appears or
━━━━━━━━      accepts it, and notice thereof given to the drawer.
WOLFE ET AL.
    vs.        If the drawee of a bill cannot be found at the place where the bill states him
 JEWETT.        to reside, and it appears that he never resided there, or has absconded,
                the bill is to be considered as dishonored.

This is an action instituted on two bills of exchange, of the following tenor and amount each, to render the defendant liable as drawer, and to recover the amount thereof.

"Fitchburg, Oct. 14, 1832."
" Exchange for $1507 77."
    " Three months after date, of this my first exchange, (second of the same tenor and date unpaid,) pay to Messrs. Wolfe, Spies and Clark, or order, fifteen hundred and seven dollars and seventy-seven cents, value received; and charge the same, with or without further advice, to your humble servant."                    "IVERS JEWETT."
" To Messrs. Merriam & Broaddus,
    Merchants, New-Orleans."
(Endorsed) "Wolfe, Spies, and Clark."

The following direction was written on the face of the bill:

" Notice of acceptance and payment, to be left at the counting room of E. Hays, Esq., New-Orleans."

The second bill was for the sum of one thousand five hundred dollars, of the same tenor and date, and payable at four months.

The plaintiff alleges, that said bills were protested for non-acceptance, and due and legal notice given to the defendant. They pray for judgment in the sum of three thousand and seven dollars and seventy-seven cents, with interest, and eight dollars for protesting fees, &c.

The defendant pleaded a general denial, and further states, that the plaintiff held a note of Merriam & Broaddus, due the

17th October, 1832, for two thousand nine hundred and nine dollars and ninety-seven cents, payable in Boston; that being the agent of Merriam & Broadus, at the north, and having no funds of theirs in his hands at the maturity of said note, he proposed to the holders, to draw on Merriam & Broaddus, at New-Orleans, as their agent, at three and four months, for the amount of said note, which proposition was accepted, and he gave the plaintiffs the drafts in question, and took a statement from them, that when said drafts were paid, it should be in full of said note; that he acted in this matter wholly as the agent of said Merriam & Broaddus, a fact well known to the plaintiffs at the time, and is not personally liable, &c.; if he ever was personally liable, he is released by the neglect of plaintiffs to have said drafts presented, acceptance and payment made in proper form, and at the proper time and place, as well as his neglect to have them protested for non-acceptance and non-payment, and further that he never received any consideration for said drafts.

Upon these pleadings and issues the parties went to trial.

The two drafts sued on, were protested for non-acceptance. at Alexandria, the 5th November, 1832. The notary states, that at the request of R. C. Hynson, holder of said drafts, he went to J. W. Broaddus, one of the firm of Merriam & Broaddus, in Alexandria, and presented them to him, and demanded of him to accept them, to which he replied he would not, &c.

The following letter from the plaintiffs to their attorneys in Alexandria, was produced in evidence :

" New-York, Nov. 24, 1832."

"By recommendation of our freind, we enclose you two notes of Messrs. Merriam & Broaddus, of your place, for collection, viz :"

" One note, dated, Oct. 14, 1831, at 12 months, payable in Boston, in our favor, for $2909 79

" One note, dated, Oct. 15, 1831, at 12 months, in favor of Clark & Doubleday, for 1914 04

$4824 01

49

WESTERN DIST.
*October*, 1836.
WOLFE ET AL.
*vs.*
JEWETT.

" These notes you will perceive are both past due, and were protested for non-payment. A few days before the above notes became due, Gen. Ivers Jewett, of Fitchburg, Massachusetts, agent of Merriam & Broaddus, proposed to give his drafts on those gentlemen, at four months, for the above notes, as he said they had not provided funds for them, and they would not be paid at maturity, Not having heard any thing from Merriam & Broaddus, and Gen. Jewett being reputed worth some property, we agreed to receive the drafts, but took care not to give up the original notes of Merriam & Broaddus, herein enclosed.

" We received two drafts, one at three, and the other at four months. These drafts were all remitted to J. H. Field & Co., New-Orleans, for acceptance by Merriam & Broaddus, or their agent. Mr. Merriam was lying ill of a fever on their arrival, and died a day or two afterwards. Their agent refused to accept them, on which Field & Co. forwarded the drafts to Alexandria, for acceptance by Mr. Broaddus, since which we have not heard from them, but presume of course they have not been accepted, as we understood Mr. Broaddus was absent in Virginia, or there at the Springs on account of ill health. Within a few days Gen. Jewett, the drawer of these drafts, has failed, and made an assignment of his property, and has passed through this city on his way to Alexandria, as is reported here, to get possession of Merriam & Broaddus's property ; and in case he succeeds we shall fare badly, as Jewett's failure is said to be a bad one. You will perceive that those drafts were received on the proposition of Gen. Jewett, and that Merriam & Broaddus had no agency in the transaction, of course there was no extension of time granted to them, and the drafts not having been accepted, the recovery of them will not, we presume, be any obstacle to your enforcing immediate payment of the original notes, now enclosed to you.

" We have been thus particular, that you may fully understand the whole transaction. We hope these notes will reach you before the arrival of Gen. Jewett, and that you will be able to attach the property of Merriam & Broad-

dus, &c. You will see the case is desperate, and requires immediate attention and prompt action. We depend on your exertions."

" WOLFE, SPIES & CLARK."

" P. S. When we receive the drafts we will forward them to you."

" Messrs. RIGG and WINN, Alexandria, Louisiana."

It was admitted that Merriam & Broaddus resided at Alexandria, doing business as merchants at the time of their death. That the notes for which these drafts were given were presented with an oppositon by the plaintiffs, to the tableau of distribution of the estate of Merriam & Broaddus.

The district judge was of opinion, the defendant was liable for the amount of the drafts sued on. From judgment rendered against him, the defendant appealed.

*Winn*, for the plaintiffs.

1. This is a suit instituted on two bills of exchange, drawn by the defendant in his individual capacity, and which were duly protested for non-acceptance, by the drawees. The defendant is therefore liable to the plaintiffs for the amount of said bills, interest, and damages.

2. The defendant agreed with the plaintiffs to give him these bills, for the purpose of meeting the notes of Merriam & Broaddus, then due. The agreement is therefore valid, and binding, and for a good and legal consideration.

3. The further time of three and four months was given to the defendant to pay off these notes, in consequence of his engagement, resulting from the drafts sued on.

4. These drafts were regularly protested for non-acceptance, at Alexandria, where the drawees ·resided. The memorandum on their face, to be presented at the counting house of E. Hays, in New-Orleans, was a mere direction, and not of the essence of the contract resulting from the written instruments, it was consequently, unnecessary to present them there for payment. *Chitty on Bills*, 325. *3 Johnson's Cases*, 71.

WESTERN DIST.    5. There was no necessity for protest and notice of
October, 1836.  non-payment, when the bills were regularly protested for
WOLFE ET AL.  non-acceptance.    This would have been nugatory.    *Chitty*
*vs.*        *on Bills*, 299.    4 *Johnson's Reports*, 148, 300, 394.
JEWETT.
6. If the drawee cannot be found, or has absconded, the
bill is considered as dishonored, and no inquiry or demand
is necessary.    But in this case, the drawees never resided in
New-Orleans, and no demand was necessary to be made
there.    *Chitty*, 212.

*Dunbar*, for the defendant, contended, that he was not
bound personally, as drawer of the bills sued on.    The
evidence and facts of the case, fully showed that he drew as
agent of Merriam & Broaddus, and with a view to protect
their interests and credit.

2. A party who appears as drawer to a bill, may show by
legal evidence, that he drew as agent, and not as principal.
This may be shown in the same manner, and on the same
principle, as *want* of consideration.    See the case of *Krumbaar*
vs. *Ludeling*, 3 *Martin*, 641.

3. There was no legal demand, and protest for non-accept-
ance.    When it was ascertained that Merriam & Broaddus
had no agency or establishment in New-Orleans, and when
no acceptance could be had there, or was refused, the drafts
in question should have been duly protested for non-accept-
ance, and notice given to the drawer.    3 *Kent's Commenta-*
*ries*, 82.

*Bullard, J.,* delivered the opinion of the court.

This is an action by the payees against the drawers of two
bills of exchange, on the usual allegations of protest for
non-acceptance, and due notice to the defendant.

The defence set up is : *First,* That the defendant drew
the bills as the agent of Merriam & Broaddus, on whom they
were drawn, and who were at the time indebted to the
plaintiffs in the same amount by notes, and that the
plaintiffs well knew that he was agent, and dealt with him
in that character ; *Second,* That the bills were not presented

in due time and at the proper place, for acceptance, and that due notice of their dishonor, was not given to the defendant as drawer.

It is not contested, that the consideration for which the bills in question were drawn, was a pre-existing debt of Merriam & Broaddus due to the plaintiffs, and that the drawing of the bills was not to be considered as a novation of that debt. It is equally clear, that Jewett was known to the plaintiffs as the agent of that house, and it is not pretended that he personally owed the plaintiffs any thing at that time. The only question therefore, under this part of the case, is whether both parties understood at the time, that Jewett, by drawing the bills, without expressing his capacity as agent, intended to render himself personally liable to the plaintiffs, in the event of their dishonor. In a letter of the plaintiffs to their attorney, remitting the original notes of Merriam & Broaddus for collection, they say, "a few days before the above notes became due, Gen. Ivers Jewett, of Fitchburg, Massachusetts, agent of Merriam & Broaddus, proposed to give his drafts on those gentlemen, at four months, for the above notes, as he said they had not provided funds for them, and they would not be paid at maturity. Not having heard any thing from Merriam & Broaddus, and Gen. Jewett being reputed worth some property, we agreed to receive the drafts, but took care not to give up the original notes, &c." The counsel for the plaintiffs contends, that although they knew Jewett as the agent of Merriam & Broaddus, yet the expressions in this letter clearly evince their intention to hold him personally liable on these bills of exchange. In cases of this kind the inquiry should be, what had the plaintiffs reason to believe was the intention and understanding of the defendant, rather than what was their intention, which was not disclosed at the time. He was the avowed and acknowledged agent of their debtors, and proposed to draw on his principals for the amount of a debt of theirs, then about to fall due. That proposition was accepted by the plaintiffs, and it is now contended, that the defendant having signed the bills, without

WESTERN DIST. expressing on their face his capacity as agent, intended to
October, 1836. make himself personally responsible.

WOLFE ET AL.       We find it difficult if not impossible to distinguish this case
*vs.*
JEWETT.       from that of Krumbaar *vs.* Ludeling, 3 Martin, 640. In that

The       party case the court said, " the attempt of Ludeling to show, that
sought    to    be he acted merely as agent for the Amelungs, in drawing the
charged    may
show    that    he bill on which this suit is commenced, can be considered pro-
acted    as   agent
in drawing the perly in no other light, than an offer to show a want of consi-
bill sued on, and deration in a written agreement, and that for this reason he
in this respect is
to be considered is not bound to fulfil any obligation which might otherwise
in the same light
as    showing    a have resulted from it." In both cases, the agents drew upon
want of consid- their principals, for a debt not personal to themselves, but due
eration,    and in
either case he is by their principals to the payees, without expressing their
not liable.
                     agency on the face of the bills.
A person may
draw, as agent,       In relation to the second ground of defence, to wit : that
upon his princi-
pal, for a debt even supposing the bills to have been drawn by the defendant
not personal to on his personal responsibility, they were not presented at the
himself, but due
by the principal proper place, and in due time, and that due notice was not
to    the    payees,
without express- given of their dishonor. It appears to us clear, that the bills
ing the agency ought to have been presented at New-Orleans, where they
on the face of
the bill.       were made payable, and if not accepted, protested, and notice

A bill or note given to the drawer. It is true the drawees did not reside
must be present-
ed for accept- there, but at Alexandria; but it is a general rule, that if the
ance at the place drawee of a bill cannot be found at the place where the bill
specified on its
face, and duly states him to reside, and it appears that he never resided
protested    for
non-acceptance, there, or has absconded, the bill is to be considered as
in case no one dishonored. *Chitty*, 213.
appears or ac-
cepts it, and no-       In the same letter of the plaintiffs, above referred to, they
tice thereof giv-
en to the drawer. say, " these drafts were all remitted to James H. Field & Co.

If the drawee New-Orleans, for acceptance, by Merriam & Broaddus, or
of a bill cannot their agent. Mr. Merriam was lying ill of a fever on their
be found at the
place where the arrival, and died a day or two afterwards. Their agent, Mr.
bill states him to
reside, and it ——, refused to accept them, on which, Messrs. Field & Co.
appears that he
never    resided forwarded the drafts to Alexandria, for acceptance by Mr.
there, or has ab-
sconded, the bill Broaddus."
is to be consid-
ered as disho-       This is a distinct admission, on the part of the plaintiffs,
nored.
                     that one of the partners was in New-Orleans at the time the
                     bills arrived, and that they had an agent there, to whom

they were presented, and yet no protest was made, and no
notice was given of their dishonor, but they were forwarded
to Alexandria, where they were not made payable, and
where the drawer never engaged they would be accepted.

WESTERN DIST.
October, 1836.

We are therefore of opinion, that the defence is sustained
on both grounds, and it is ordered, adjudged and decreed,
that the judgment of the District Court be annulled, avoided
and reversed, and ours is for the defendant, with costs in
both courts.