EASTERN DIST.
*April,* 1858.

COURTNAY ET AL *vs.* MISSISSIPPI MARINE AND FIRE INS. CO.

COURTNAY ET AL
*vs.*
MISS. MARINE
AND FIRE INS. CO.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

12L 233
106 149

Parole evidence is inadmissible to prove that a corporation, as an insurance company, in its corporate capacity, undertook a certain risk, for which it is legally liable. In general, corporations can only contract in writing through their official organ, although their assent to certain contracts may sometimes be inferred from their silence or acquiescence.

The president of an insurance company cannot be considered as acting within the scope of his official authority in relation to an insurance, unless his act is evidenced by his signature.

So, where a policy of insurance was taken out on one hundred and forty-three hogsheads of sugar, from New-Orleans to Louisville, in the steamer Belfast, and only twenty-six were taken the first trip ; the remaining one hundred and seventeen were shipped on the second trip of the boat, without any endorsement on the policy or new written agreement, and the boat and cargo was lost by fire : *Held*, that the insurers were not liable, the policy not extending to the second trip.

This is an action on a policy of insurance.

The plaintiffs allege, that on the 5th of February, 1836, they contracted with the Mississippi Marine and Fire Insurance Company, according to the terms of a policy that day issued, for the insurance of one hundred and forty-three hogsheads of sugar, of the value of fourteen thousand seven hundred and ninety-seven dollars, on board the steamer Belfast, bound to Louisville, which were to have been laden on the coast, at Fortier's plantation. That when the steamboat arrived at the plantation, only twenty-six hogsheads could be laden on board, by reason of the boat being full.

They further allege, that the Insurance Company undertook and agreed to extend the policy to, and cover the remainder of the sugar, if laden on the second trip of said boat ; and they were so laden, being of the value of thirteen thousand five hundred dollars ; and that on the second trip

EASTERN DIST.
April, 1838.

COURTNAY ET AL
vs.
MISS. MARINE
AND FIRE INS. CO.
the boat took fire, and together with her cargo, was totally destroyed, whereby the insurers were liable. They pray judgment for the amount of their loss in the premises.

The defendants admitted the execution of the policy sued on, but denied that they are liable for the loss claimed. They expressly denied that they agreed to extend the policy to and cover the remainder of the sugar, shipped on the second trip of the boat, as alleged.

On these pleadings and issues the cause was tried before the court and a jury.

The policy of insurance which the plaintiffs took out on the one hundred and forty-three hogsheads of sugar, was produced in evidence. It was dated at New-Orleans, the 5th day of February, 1836, and stated, that the plaintiffs, on account of whom it might concern, made insurance at and from New-Orleans to Louisville, Kentucky, upon all kinds of lawful goods and merchandize laden, or to be laden on board the good steamboat, called the Belfast, &c., beginning the adventure upon the said goods and merchandize, from and immediately following the loading thereof, on board of the said steamboat, at, *as aforesaid,* and so shall continue and endure until the said goods and merchandize shall be safely landed at, *as aforesaid.*

"This insurance is declared on one hundred and forty-three hogsheads of sugar, at one dollar, is one hundred and forty-three dollars; to pay partial average on each ten hogsheads as numbered in succession. Said shipment to be taken on board on the coast."

There were but twenty-six hogsheads taken in at the first trip of the boat, after the policy was taken out.

On the 25th of March, after the boat returned, she took in the remaining one hundred and seventeen hogsheads; but there was no written endorsement on the policy concerning the second trip. On her way to Louisville, during this trip, the boat and cargo were totally lost by fire.

The plaintiffs offered the depositions of witnesses in evidence, to prove the engagement of the defendants to extend the policy to a second voyage, to which the defendants' coun-

sel objected, on the ground, that by the charter and laws of
the company, the policy or contract must be in writing,
signed by the president ; and that no parole testimony could
be admitted to bind the defendants.

The court sustained the objections, and remarked, that not
only contracts with a corporation, but several kinds of special
commercial contracts, were required to be in writing, etc.  A
bill of exception was taken to the opinion of the court.

The evidence showed, that the plaintiffs took out a fire
policy and insured the remaining one hundred and seventeen
hogsheads of sugar, on the plantation, for one month.  It
further appeared, that the return of the premium on the first
insurance had not been demanded.

The district judge charged the jury, that the plaintiffs
*could only recover on the policy; that if they considered the*
plaintiffs had demanded a loss on a second trip of the boat,
they can only recover on that demand and legal proof of it ;
that it is usually considered, when a policy is made on a ship
or boat, from one port or place to another, the policy attaches
only on the voyage next following the date of the policy ;
that if the plaintiffs had proved, according to their allegations
in their petition, that the policy was to be continued to a
second trip after the date of the policy, to the satisfaction of
the jury, the verdict ought to be for the plaintiffs for the
amount of the cargo insured and lost; but if the plaintiffs
had not proved an agreement to continue the policy from the
first to the second voyage, the verdict ought to be for the
defendants.

The court further instructed the jury that corporations are
only bound in the manner directed by the act of incorpora-
tion ; that this was particularly true of corporations for parti-
cular objects and purposes ; and to make particular contracts,
they could only be made in the manner pointed out by the
charter.

That there were subordinate contracts, which corporations
recognized and allowed their officers to make, but which
were generally contracts for services and materials on which

EASTERN DIST.
April, 1838.

COURTNAY ET AL
vs.
MISS. MARINE
AND FIRE INS. CO.

the corporations were liable, and the contract was only to prove the value, etc.

But special contracts must be made in the manner directed by the act of incorporation.

The counsel for the plaintiffs excepted to the charge.

The jury returned a verdict for the defendants, and after an unsuccessful attempt to obtain a new trial, from judgment confirming the verdict, the plaintiffs appealed.

*Strawbridge*, for the plaintiffs.

1. The ancient rule that corporations could only be known or act by their common seal, seems to have been greatly modified, if not entirely exploded, even in those cases, when by the grant of incorporation, a common seal is provided. If the general rule exists, the exceptions are so numerous as to make the rule itself an exception.

2. In equity, it is not held to be necessary that every corporate act should be under seal. Attorney General *vs.* Davy, 2 *Atkins' Reports*, 212. Same *vs.* Scott, 1 *Vesey*, 413. At law, the payment of rent to the bailiffs of a borough by the party, as tenant to a corporation, admits a tenancy from year to year, although a deed of demise had been prepared and executed by the bailiffs, and some of the officers of the corporation, but has not been sealed with the corporation seal. 2 *Starkie's Evidence*, 425.

Trover or trespass lies against a corporation, by reason of the acts of its agents. *Ibid.*

3. All contracts made by the authorized agents of a corporation, within the legitimate scope of its institution, are binding upon the corporation. 7 *Cranch*, 299.

The act incorporating the Mechanics' Bank of Alexandria, provides : "That every contract or engagement on behalf of the corporation shall be signed by the President and countersigned by the cashier." *Held*, not to apply to contracts, when the law would imply an obligation. 5 *Wheaton*, 326.

4. The acts of an officer done in the ordinary course of the business confided to him, are *prima facie* evidence, that they were in the scope of his duty. 8 *Wheaton*, 338.

5. The bailiffs receive rent, the law implies a title. The Eastern Dist. *April*, 1838. president of an insurance company receives premium, why not imply an insurance ? at least, an .obligation on the part COURTNAY ET AL *vs.* MISS. MARINE AND FIRE INS. CO. of the company to meet the risk for which the premium was paid. The withholding the premium after the failure of the voyage, was equivalent to the then reception of it as upon a fresh policy.

6. If the president had in this case made an endorsement upon the policy, that it should extend to the next voyage, would not that have rendered it obligatory upon the corporation ? Has he not done that which is equivalent thereto? Has he not by writing, countersigned by his secretary, furnished clear and conclusive evidence of his willingness that the policy should extend to the second trip ? On the 5th of February the first policy is dated, the boat then lying at New-Orleans; the property insured, being one hundred and forty-three hogsheads of sugar, to be put on board on the coast; loss by fire insured against, and risk to commence when it should be on board, and terminate at Louisville. On the eighth day thereafter, and as soon as it could have been ascertained that the risk had not commenced, he received a premium, and awarded an insurance upon the same sugar, against destruction by fire, withholding at the same time the premium thus paid. If all this does not prove a willingness to extend the policy, and if the law will not therefrom imply a willingness, then the law will presume that a fraud was committed by the agents of the company, a presumption which is never indulged in.

7. Can it be, that this company was receiving double insurance ; two policies ; two premiums ; and against a loss by fire ? The transaction, as evidenced by the writings alone, is so plain, that he who runs may read :

The article is on the coast; the boat could not take it. How long before she returns ? Perhaps a month. Take out a fire policy, to secure it during that time, and all will be well. 'Twas done ; now they allege, 'twas not well done.

Eastern Dist.
April, 1838.

COURTNAY ET AL
vs.
MISS. MARINE
AND FIRE INS. CO.

*Locket*, for the defendants, contended, that parole proof, offered to show the defendants agreed to extend the policy of insurance to the second trip of the boat, was properly rejected. Corporations can only bind themselves in the mode pointed out by their charters; and in this case, all policies and agreements must be signed by the president, and countersigned by the secretary, and sealed.

2. It is clear the policy of insurance, in this case, was only for one voyage. Then the responsibility of the defendants ceased. If they are to be made responsible for a risk, not embraced in the policy, it must be shown by some contract or agreement entered into according to the charter, and surely to make insurance on the second trip, a new contract must be shown, but which is not.

3. No agreement to insure during the second voyage, can be inferred from the fact the premium was not returned. The testimony shows it was never demanded, and the company supposed the sugar had gone to its destination by the first voyage.

4. The policy is in the name of Courtnay, and to take in one hundred and forty-three hogsheads of sugar, on the coast, and does not say where. The fire policy insures sugar on E. Fortier's plantation, and is made out in the name of Buchanan & Hagan. These two are essentially different; and neither can be extended to the second voyage of the boat.

5. All the cases cited by the plaintiffs, in relation to extending and varying written contracts, are where individuals were partners, contracting for their own interest. But here is a corporation acting under the provisions of a charter prescribing the mode of contracting, and it can only bind itself in writing.

6. Even if the testimony of Buchanan, who only testifies to the taking out the fire policy, *was admissible*, it would not be sufficient to make out the case; because the amount in dispute is above five hundred dollars, which must be established at least by one credible witness, and strong corroborating circumstances; and there is not one corroborating circumstance here.

*Bullard, J.,* delivered the opinion of the court.

EASTERN DIST.

*April,* 1838.

COURTNAY ET AL
*vs.*
MISS. MARINE
AND FIRE INS. CO.

This case comes before us upon several bills of exceptions. The first was taken to the refusal of the judge to admit parole evidence, to prove the engagement of the defendants, to extend the policy of insurance to a second voyage or trip of the steamer Belfast, which was opposed on the ground, that the charter and by-laws of the corporation require the policy or contract to be in writing, signed by the president, and that no parole evidence could be admitted, to bind the defendants.

The facts alleged as the ground of the action, were, that the plaintiffs contracted with the defendants, by a policy, for the insurance of one hundred and forty-three hogsheads of sugar, on board the Belfast, bound to Louisville, to be laden at Fortier's plantation, but that only twenty-six hogsheads could be taken on board; and that the defendants afterwards undertook and agreed, that the policy should extend to, and cover the remainder of the sugar, if laden on the next trip of the boat; that they were so laden, and a total loss ensued by fire.

It appears to us, the court did not err. The contract sought to be enforced, is distinct from the original policy, which it is conceded, did not extend to the second voyage of the boat. It was in fact a new insurance, and parole evidence is inadmissible to prove that the defendants, in their corporate capacity, undertook the risk. In general, corporations can only contract in writing, through their official organs, although their assent to certain contracts may sometimes be inferred from their silence and acquiescence, as in the case of the Bank of the United States *vs.* Dandridge, 12 Wheaton, 64, decided by the Supreme Court of the United States, in which it was ruled, that where a cashier's official bond had not been formally accepted, according to the by-laws of the bank, yet the corporation having permitted him to act in that capacity, was considered as having tacitly accepted the bond. The argument of the counsel for the appellant, that the act of incorporation meant only to dispense

Parole evidence is inadmissible to prove that a corporation, as an insurance company, in its corporate capacity undertook a certain risk, for which it is legally liable. In general, corporations can only contract in writing through their official organs, although their assent to certain contracts may sometimes be inferred from their silence or acquiescence.

EASTERN DIST.
April, 1838.

COURTNAY ET AL
vs.
MISS. MARINE
AND FIRE INS. CO.

with a common seal, and that the provision requiring only the signature of the president, or two directors, etc., to all policies, is merely directory, proves too much. It would go to show, that a written policy might be dispensed with altogether, and a parole agreement for insurance be sufficient to bind the corporation. The president of the corporation cannot be considered as acting within the scope of his authority, in relation to an insurance, unless his act is evidenced by his signature. We do not mean to say, that a new policy was indispensable in this case. The first policy might have been so modified, as to extend to the new risk.

There are cases, certainly, according to the settled doctrine at present, in which corporations may be bound by implied contracts without writing, deduced by inference from corporate acts. But the present case does not appear to us to fall under that category; for even admitting that the defendants insured the sugar against fire, at Fortier's plantation, for one month, it does not follow that they took the risk afterwards, on board the steamboat. The other circumstance, to wit: that the premium paid on the first insurance was not returned, has been sufficiently explained, by showing that it never was demanded.

The authorites upon which the counsel for the appellant relies, in support of his right, to offer parole evidence in this case, notwithstanding the rule, that such evidence is in general inadmissible against or beyond what is contained in written contracts, to vary, modify, or extend them, appears to us far from satisfactory. The case of Ludling vs. Krumbar, was between the payee and drawer of a bill of exchange, in which the latter was permitted to show by parole, that in drawing the bill he was recognized by the payee himself as merely agent of the drawee, and consequently, a want of consideration as to him. 3 *Martin*, 640. The case of Rabassa vs. Orleans Navigation Co., involved a question of lease, and it was held, that such a contract could be proved by parole, where no act had been signed by the parties. 5 *Louisiana Reports*, 462.

The president of an insurance company cannot be considered as acting within the scope of his authority, in relation to an insurance, unless his act is evidenced by his signature.

So, where a policy of insurance was taken out, on one hundred and forty-three hogsheads of sugar, from New-Orleans to Louisville, on the steamer Belfast, and only twenty-six were taken the first trip, the remaining one hundred and seventeen were shipped on the second trip of the boat, without any endorsement on the policy or new written agreement, and the boat and cargo was lost by fire: *Held*, that the insurers were not liable, the policy not extending to the second trip.

The charge of the judge to the jury, which was also excepted to, appears to us not to have been erroneous, and we are not satisfied that the verdict was wrong.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.