ROWLAND G. HAZARD *v.* WILLIAM M. LAMBETH and others.

One acting as an agent, will not be liable, personally, to a party aware that he acts as such.

A party, who seeks to render another liable for the debt of a third person, must prove such liability beyond all doubt, or he cannot recover. C. C. 3008.

Mere voluntary payments, on some previous occasions, will not, of themselves, create an obligation to pay under future, though similar circumstances.

APPEAL from the Commercial Court of New Orleans, *Watts*, J.

MORPHY, J. The defendants have appealed from a judgment decreeing them to pay sundry drafts of the plaintiff on them, amounting to $6229 97. These drafts are founded on orders for negro clothing, which the petitioner, who is a manufacturer residing in Rhode Island, was in the practice of obtaining from a number of planters living on Red River, and in other parts of the State. The orders are all as follows, to wit : "You are requested to ship for me yearly, until otherwise ordered, the following goods, consigned to the care of W. M. Lambeth & Thompson, or successors,

New Orleans, who are hereby requested to authorize your· draft on them for the amount, *for my account*, and, on receipt of bill of lading, or other evidence of shipment, to accept the same, payable 10th of January after. Winter clothing to be shipped by 1st of August, and summer clothing by 10th of March, each year." To these orders were appended lists of the articles required, consisting of negro clothing. From an inspection of these orders it is evident, that they were intended to be submitted for the approbation and acceptance of defendants. On the face of, and across, each order, the words " draft authorized as herein requested," are to be found ; but for reasons which have not been explained, the signature of the defendants was never solicited by the plaintiff, who, it appears, was in the habit of furnishing them with duplicate copies of these orders. In pursuance of this arrangement, the goods ordered were annually sent from the north, consigned to W. M. Lambeth & Thompson, or Lambeth, Thompson & Co., to whom the plaintiff forwarded the bills of lading, enclosed in letters of advice of the following tenor, to wit :

" I hand you bill of lading for one bale, for account of J. Chambers, Esq., in conformity to whose instructions I draw on you for the amount, $342 09, payable 10th of January next. Invoice is forwarded to Mr. C. by mail.

" Yours respectfully,

"᛫ R. G. Hazard."

On the arrival of the goods, the defendants were in the habit of forwarding them to the planters whose business they did ; and, with a few exceptions, they accepted or paid the drafts drawn on them under these orders. The goods in relation to which the difficulty arose, were shipped in June or July, 1841, received here in August, and immediately forwarded to those who ordered them respectively, but the defendants declined accepting or paying the drafts drawn on them by the plaintiff ; whereupon the present suit was brought.

The inferior judge was of opinion that by receiving and forwarding the goods, when they knew that under the orders they were to accept the drafts, the defendants made themselves liable to the plaintiff as fully as if they had actually accepted them.

From the terms of these orders and the evidence, it appears to

us that, even had the defendants assented to the agreement between the plaintiff and the planters, and accepted the drafts sued on, they would have incurred no personal responsibility, so long as the drafts thus accepted did not pass into the hands of third persons.   The defendants, who were, in New Orleans, the commission merchants of the planters with whom the plaintiff was treating in different parts of the country, were requested to authorize his drafts on them, and, therefore, to accept them *for the account* of those who gave the orders, on the receipt of the bill of lading or other evidence of ship-ment.   The understanding seems to have been that the defendants should be a channel of communication between him and them, to receive and forward the goods, and accept his drafts for them ; and that, through the defendants, the purchasers should pay such drafts by placing funds in their hands on the 10th of January.   Had plaintiff considered the obligation of Lambeth & Thompson in a different light, it is difficult to suppose that he would have neglect-ed to secure their personal liability, by getting them to sign the authorization to draw, written on the face of the orders.   He was contented with furnishing them with duplicates of the orders, as a guide for the course they were to pursue.   We, accordingly, find plaintiff forwarding directly to the planters invoices of the goods shipped, and sometimes reminding them that he would draw on their factors for the amount, payable on the 10th of January fol-lowing.   In a letter addressed to Chambers, one of those who gave the orders for goods, he says : " Messrs. Lambeth & Thomp-son decline accepting my bills for your account, waiting advice from you on the subject.   The number of bills similarly situated is a very serious inconvenience to me, and I must, therefore, solicit your attention to it with as little delay as practicable.   I annex a draft for the amount, payable at the time specified in the order, and will be much obliged by your *signing and returning it* to me, to the care of S. Robert, New Orleans.

" This will probably be the most satisfactory mode to your agents here, and at the same time produce least delay, which, I as-sure you, is, at this time, very important to me.

"Yours truly,

"R. G. HAZARD."

In this letter, written from New Orleans, and bearing date the

24th of December, 1841, long after the goods of Chambers had been forwarded to him, the plaintiff makes no complaint against the defendants for refusing his drafts, nor does he intimate that they are personally liable to him in any way. After the 10th of January following, plaintiff called upon Audrey, another planter who had ordered goods. He informed him that Lambeth & Thompson had not paid his bill, and that the reason of it was, that he (Audrey) had not sent down his crop. He wished to know how soon he proposed to send it to them. Audrey further testifies, that when he gave orders to Hazard, he thought of paying him through the defendants, and expected to have funds in their hands to meet his drafts on them. That this arrangement was more convenient for Hazard, for whom it would have been a great deal of trouble to go round the country to collect the amounts due by the several planters for the goods he sold. On another occasion, plaintiff, who had an agent in New Orleans, stopped in the hands of defendants, goods which had been shipped for J. M. Smith, another planter; and gave, as his reason for so doing, that he did not believe that Smith was good. In answer to a letter of the defendants, reminding plaintiff that they had already advised him, that they would only accept under special directions from the planters, given each year, he says : " In regard to the drafts, I have always made it a point to draw on you *through Bank*, only for those about whose accounts I supposed there could possibly be no question, and for whom you would be willing to accept, such as General Thomas, Carnel, and a few others ;" thus explicitly admitting that it was optional with the defendants to accept or refuse his drafts, and not cautioning them to keep or return the goods, in case they should see fit not to accept or pay his drafts. Upon the whole, we think that the defendants acted, and were considered throughout, only as agents. As such, they could not be held liable to plaintiff, even had they accepted his drafts, because he knew the circumstances under which such acceptance would have been given. 3 Mart. 640. 10 La. 390. But even had we any doubt as to the capacity in which it was intended that the defendants should act under these orders, we should still come to the same conclusion, because it behoves the party who seeks to render one person liable for the debt of another, to show such liability

beyond all doubt. Civ. Code, art. 3008. If such be the case, the defendants cannot surely be made responsible for the plaintiff's claims on those who ordered the goods, when they have neither assented to his agreement with them, nor accepted the bills sued on. But it is urged that, by paying former drafts, drawn under similar circumstances, and by receiving and forwarding the goods, with the knowledge that under the orders they were to accept the plaintiff's bills, they have made themselves liable, under an implied contract. A mere voluntary payment, in some previous instances, does not, of itself, create an obligation to pay under future, although similar circumstances ; and as to the act of receiving and forwarding the goods, it was a duty which the defendants were expected to perform by all parties. The plaintiff, who had an agent here, might have stopped the goods in their hands, as he did on one occasion ; or he might have notified them not to forward the goods as soon as his drafts were first refused acceptance. But admitting that an implied contract can fairly be inferred from the acts of the defendants, and that they should not have forwarded the goods without accepting the drafts, it surely cannot create against them a different, or greater responsibility, than would have resulted from an acceptance of the drafts themselves. In order to render Lambeth & Thompson personally liable in either case, it should have been shown that they were provided by the planters with funds, which they failed to apply, as they expressly or impliedly engaged to do. There is no evidence that any of those who ordered the goods had funds in their hands, on the 10th of January, 1842, to pay the amounts drawn for on their agents. Most of them have declared that they considered the payments of plaintiff's bills, previously made by the defendants, as voluntary accommodations to them, as they had sent their crops to pay their debts generally, were in arrears to them, and had given no special directions in relation to the plaintiff's drafts ; but that they expected defendants would pay them, as they were in the habit of furnishing their plantations with the usual and necessary supplies every year. Of the fourteen planters, for whose negro clothing the drafts sued on were drawn, five have changed their factors, and nine forwarded their cotton to the defendants last season ; but it does not appear that, after paying their debts to the defendants, there remained in the

hands of the latter funds sufficient to pay the plaintiff's bills. In conclusion, the defendants having entered into no direct or personal engagement towards the plaintiff, and not having retained or misapplied any funds placed in their hands to meet his drafts, he has no right of action against them.

It is, therefore, ordered that the judgment of the Commercial Court be reversed, and that ours be for the defendants, with costs in both courts.

*Hamner* and *I. W. Smith*, for the plaintiff.

*W. M. Randolph*, and *G. Strawbridge*, for the appellants.