### No. 3379

### Second Circuit

---

### COOK-DOUGLAS CO., INC., v. PRUD-HOMME

---

(March 24, 1930. Opinion and Decree.)

---

Craig, Bolin & Magee, of Mansfield, attorneys for plaintiff, appellant.

C. B. Huson, of Mansfield, attorney for defendant, appellee.

DREW, J. Plaintiff, a corporation, brought suit against the defendant, widow of J. B. Prudhomme, deceased, alleging that during the lifetime of said J. B. Prudhomme it had sold goods, wares, and merchandise to deceased for the community then existing between him and defendant; that, at the time of the death of J. B. Prudhomme, there was a balance due of $149.25. After the death of said Prudhomme, the defendant herein, his widow,

went into possession of the property left by him as owner of one-half and usufructuary of the other half; that thereafter she assumed the account due to plaintiff and promised to pay the same; and that she assumed said debt and promised to pay same for the consideration of the signing of a bond for her by L. M. Cook, president of Cook-Douglas Company, Incorporated.

The defense is a general denial.

The evidence shows that, at the time of death of J. B. Prudhomme, there was no community property of any kind whatsoever, therefore nothing for defendant to go into possession of—no community to accept. "Unless a wife accepts expressly or tacitly the community, she stands in relation to its debts very much in the position which she would to the debts of any other third person. A promise to pay the debt of a third person must be express, and in writing, signed by the party to be charged." R. C. C. art. 2278; Stuffler vs. Puckett, 30 La. Ann. 813.

Defendant was not liable for the debts of the community during the lifetime of her husband, neither was she liable after his death, unless she has made herself liable by some specific acts of hers as defined by law. Therefore, the remaining question to be decided is: Did defendant promise to pay the community debt for the consideration of Mr. Cook signing her bond to prevent her from going to jail, under a charge of violating the Hood Act, and, if so, is it a promise to pay such as would make admissible parol testimony to prove over the objection of defendant?

Mr. Cook, president of plaintiff corporation, testified as follows:

"Q. What was the consideration of your signing that bond?
"A. Mr. Craig, I had no incentive only to try to help her out. Mr. Prudhomme, just before he died told me, we were talking about that business, and he told me, 'if I don't live to pay you, you know who will', but he never called no name. He and Mrs. Prudhomme always managed their business together and would come and she would decide what they wanted and I would put it up for them all the time. Hardly ever he was there without she was there too to say what to buy, and I thought when Mrs. Prudhomme was arrested, or I thought at the time he said he meant her. His boys never did buy anything for him or have anything to do with him. It seemed that him and her did their business and had their understandings together. Well, when that man come to the office and called for Mr. Cook, Morris went around to where the sheriff was and they came back together and said he was the wrong Cook, that Mrs. Prudhomme wanted me. I went around there and when she told me her trouble, that she had been arrested and had to give bond and was accused of selling whisky, she said she hadn't sold it and all of that, and I said, 'Well, Mrs. Prudhomme, you can't attend to business and be in jail too', and I said, 'I will go on the bond if you will agree to go home and attend to your business and quit the whisky business if you have been selling or handling it or anything of that kind and pay us what you owe us', and she remarked, said, 'Mr. Cook, if I live I will pay you'. Said, 'I can't do it all at once', and I said, 'That is all right'. I said, 'Pay it along as you can', but I said, 'Go home and attend to your business and I will go on your bond', and I thought it a little bit strange the boys wasn't there and there was nobody to help her out but I knew she couldn't attend to her business unless she was at home and I went on her bond and that was the reason."

He further testified that he thought that when Mr. Prudhomme said, "If I don't live to pay it, you know who will," that he was referring to his wife, the defendant herein, because she had always been with him and they always did business together.

On cross-examination, Mr. Cook testified, "I feel she owes it even without assuming it, because she used the goods and selected them herself."

Plaintiff was undoubtedly under the erroneous impression that defendant was legally bound for the debt of her husband before he signed the bond and his reason for signing the bond was to allow her to go home and attend to her business, realizing that she could not make any money if forced to go to jail. He assisted her in order that she might have a better opportunity to make the money to pay him a debt he then claimed and thought she owed him, and did not sign the bond because of any new promise made at the time. His testimony refutes that last proposition, and the objection to parol evidence to prove the promise to pay a debt of a third person should have been sustained.

Defendant raised the further question in the alternative that, if defendant did make the promise as alleged, it was contrary to public morals and made under duress. It is unnecessary to pass on this question under our finding in this case. However, article 90 of the Code of Criminal Procedure of the state of Louisiana deals with and outlaws contracts made to indemnify surety against loss on any bail bond; and the law in general frowns on those who take advantage of criminal prosecutions to extract funds and promises from the unfortunate.

One who seeks to render one person liable for the debt of another must show such liability beyond all doubt. Hazard vs. Lambeth et al., 3 Rob. 378; Cleneay et al. vs. Dougherty, 135 La. 346, 65 So. 485.

The judgment of the lower court was in favor of the defendant, rejecting the demands of the plaintiff, and the judgment is correct.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be affirmed; plaintiff and appellant to pay costs of appeal.