Defendant brings up this appeal from a judgment in favor of plaintiff for $1055.51 with interest and attorneys' fees, and awarding him judgment against plaintiff in reconvention for $600. He contends that the demand of the plaintiff should have been rejected in toto, and that the judgment in his favor should be increased to $900.
Careful study of the record convinces us that the District Judge in his reasons for judgment has correctly resolved the facts and the law applicable thereto, and we therefore adopt his finding. It is as follows:
"Plaintiff brings this suit to recover of defendant $1,135.51 with interest, costs and attorneys fees, representing defendant's pro-rata share of the operating expenses of six oil wells in Caddo Parish.
"The interests in the wells known as Gray #1, Gray #2 and Thigpen-Herold #1 were acquired by Tullman from Paul Miller. Gray #2 was not a producer.
"The other interests, known as Bell #1, 3 4, Herold #1 and Hurdle, #1 were all conveyed to defendant by plaintiff, the earliest conveyance being in 1942.
"Most of the assignments contain the stipulation that purchaser is to pay his part of all operating and maintenance expense. Defendant admits that this agreement extended to all of the wells in question. These expenses were duly paid up to the month of February, 1945.
"Therefore, as to plaintiff's demand, the only question involved is the proven correctness of the accounts filed covering each well.
"Defendant is a New York wholesale woolmerchant. Knows nothing of the oil business. Never inspected any of the properties, purchasing wholly upon the faith *Page 135 
of representations made by Gilbert, an experienced oil operator.
"Defendant denies the correctness of the accounts and reconvenes for sums of $1250.00, $600.00 and $300.00. The $1250.00 item was dismissed as of non suit and has been made the basis of a separate action.
"The $300.00 appears to have been credited on the March operating statement as shown on plaintiff's Exhibit P-11.
"The $600.00 claim rose out of a loan of $700.00 made by Tullman to Gilbert. Gilbert claims that only $100.00 of this was a loan and that $600.00 covered the purchase of a 1/8 of 7/8 interest in the Thigpen Herold lease.
"This interest was conveyed to Tullman by Paul Miller, together with an interest in Gray #1 and #2, for a recited consideration of $1,000.00. It appears that the real consideration was $1,800.00. Gilbert claims that in some way not clear to the Court $600.00 of this $700.00 loan was his as his profit in Tullman's acquisition of an interest in the properties conveyed by Miller. This interest was assigned to Tullman by Miller. Gilbert claims that the Thigpen-Herold #1 was really purchased from him. No agreement is proven that Gilbert was to get a $600.00 commission out of this transaction. He does not mention it in his contemporaneous correspondence. Defendant is entitled to judgment for this sum.
"Statements of operating and maintenance expenses were rendered Tullman monthly and were paid in full up to February, 1945.
"Defendant offers in evidence itemized statements covering each well separately for the months of February through September. They are composed of particular expenses chargeable to each well, and general expense applicable to and pro rated among all the wells. They are not in the form of affidavits, and are not supported by vouchers. Plaintiff contents himself in general by testifying over the objection of defendant, that to his personal knowledge the statements are correct and unpaid, though submitted to Tullman.
"Gilbert testifies:
" 'I supervise the wells. I hired and fired men. I hired a pumper who devotes his entire time to the operation of the wells and who lives upon the leases. I furnish a pulling machine for the exclusive use of the leases. That is without expense to the unit holders. I furnished sand pumps. I have furnished swab lines and also all tools necessary for fishing rods et cetera and for the pulling of the wells. I have furnished a pick-up truck for use on the leases without expense to the unit holders. I make various trips to Vivian to supervise. I do and authorize all purchasing. Make out statements which are rendered to the unit holders each month. I figured the proportionate amount to be charged to each well. I make the payroll. I borrowed money from the Vivian Bank for the purpose of carrying on the operations. I drive to Vivian at my own expense, use my own car without any charge to the unit holders.
" 'In general, I supervise the entire operation, and I maintain a phone I have listed for the purpose of the pumper getting in touch with me, et cetera. I do anything I can for the general good of the leases; to get the maximum production.'
"He states that all of the materials were purchased by him or under his direction.
"He was cross-examined as to each item on the September statement, and positively states that each is correct. As to the other statements, counsel for defendant merely calls upon him to state that no major purchases were without his approval first obtained.
[1] "When an account is rendered and no objection is made within a reasonable time, it is a prima facie admission that the account is correct, unless rebutted. Ritchie Grocer Co. v. Dean, 182 La. 518, 162 So. 62; Frierson Co., Inc., v. Murray, La. App., 190 So. 132.
"Considering the above authorities, we think the account is proven when Gilbert testified that he made it up and that he had personal knowledge of the correctness of each individual item.
"The claim of $250.00, monthly salary of pumper and operator Finley, is contested *Page 136 
because he also supervised five wells at Oil 'City. It is not shown that this supervision interfered with his work as pumper and operator of the six wells involved herein. There is no basis for allowing defendant any credit for the outside supervision.
"Gilbert admits that he was away from Louisiana at one period from July 16 to October 31, and at other times aggregating a month. Out of the period of eight months covered by this suit he was away three and one half months. Necessarily, he was not doing any traveling or exercising any personal supervision during this time. He was maintaining his office and equipment other than for traveling.
"When this traveling and supervision charge is reduced to conform to Tullman's interest it amounts to about $150.00. We think this should be reduced by $80.00.
"We do not think it important that some of the material purchased by Gilbert in his own name and used on the lease has not been paid for. When Gilbert purchased the property on credit he acquired title and should be paid by the owners of the wells who benefited by its use.
"The contention of defendant that the interest of Tullman is figured wrong is based upon only one conveyance. An examination of all of them shows that he acquired interests in the same well from both Gilbert and others. We cannot discover error in the computation. Plaintiff fails to offer proof of the cost incurred in preparing and recording the lien and in obtaining copies of the assignments.
"The allegations of plaintiff's petition make it apparent that he is proceeding under the provisions of Act 68 of 1942, which permits the issuance of the writ of provisional seizure and the recovery of 10% attorneys fees.
"There is accordingly judgment for plaintiff in the sum of $1055.51, with legal interest from the maturity date of each monthly amount due until paid, and 10% additional on both principal and interest as attorneys' fees, maintaining the writ of provisional seizure and recognizing the lien and privilege of plaintiff on the property seized thereunder, over all persons whomsoever. The fees of Thos. P. Fitzgerald, curator ad hoc, are fixed at $25.00 and taxed as costs herein. Defendant to pay all costs of the main demand.
"There is further judgment for defendant on his reconventional demand in the sum of $600.00, with legal interest thereon from November 27, 1944, until paid.
"Plaintiff to pay the cost of the reconventional demand."
The reconventional demand was made up of three items:
1. $1250 for damages with reference to the sale to defendant of 1/2 interest in the Hurdle lease and the well thereon for $5000. Defendant now contends that the price should have been $3750. A voluntary non suit was entered as to this item and it has been made the subject of another suit.
2. $600 loaned to plaintiff November 27, 1944.
3. $300 paid plaintiff Dec. 12, 1944, for the Hawkins 1/8 of 7/8 working interest in Gray #1 well and the lease of 10 acres on which it is located, which plaintiff did not own and never conveyed to defendant.
The reason defendant was not awarded judgment for the $300 item is that plaintiff gave him credit for this on the March, 1945 statement. Defendant contends that it was error to allow offset or compensation of this item because the account was an unliquidated, uncertain, and indefinite open account. We fail to see where it can prejudice the rights of defendant to offset these amounts. Otherwise, the plaintiff should have recovered judgment for this item, which carries attorneys' fees of 10% or $30, that defendant is saved by offsetting these amounts.
Defendant contends that the demand of plaintiff should be rejected in full for two reasons:
1. That the account was not proven and that it is incorrect.
2. That plaintiff was trustee for defendant and the other owners of the leases, and that he was unfaithful as a trustee and therefore defendant had the right to withhold payment from him on that account, citing: Hanna v. Clark, 204 Pa. 145, 53 A. 757; 54 Am.Jur., p. 423; 65 Corpus Juris, p. *Page 137 
929; Backus v. Finkelstein, D.C., 23 F.2d 357; Caldwell v. Hicks, D.C., 15 F. Supp. 46; Fellows v. Loomis, 204 Pa. 227, 53 A. 999; Woods v. City National Bank Trust Co., 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820.
[2, 3] We are of the opinion that plaintiff made sufficient proof of the account unless defendant shows that it is incorrect, which he has not done. It is true that he says he complained about some things on the account, and that plaintiff promised to adjust it but never did. Defendant did not point out any particular items on the account that were not correct.
Plaintiff and defendant had their first transaction in February, 1942, when plaintiff sold defendant an interest in two ten acre tracts of the Bell lease, and the last transaction in October, 1944, when plaintiff sold defendant an interest in another ten acre tract of the Bell lease. Each of the three tracts had a producing well. The Paul Miller assignment is dated March 6, 1945, but the record discloses that the trade was made before that time, partly on credit and Miller did not execute the assignment until he had been paid in full.
All the time from February, 1942, to February, 1945, defendant had received monthly statements from plaintiff and had paid them. We believe, while the record does not affirmatively show it, that we may fairly conclude that when defendant found out that plaintiff had paid only $7500 for the Hurdle lease and well, which defendant says plaintiff had first told him cost $10,000, he decided not to pay any more bills from plaintiff, until he got back $1250 that he felt like plaintiff had overcharged him in that transaction. The sale of the Hurdle lease had no connection with plaintiff's operation of the wells for all the lessees, and in our opinion, the record does not disclose dishonesty or unfaithfulness of the plaintiff in such capacity.
[4] Plaintiff in brief asks for increase of the judgment in his favor to $1135.51, the amount sued for, and $17.50 additional for preparing and filing the lien and for certified copies of the assignments. He also asks that the reconventional demand be rejected entirely. Plaintiff has not appealed from that part of the judgment that is unfavorable to him, and has not answered the appeal taken by defendant, and is therefore not entitled to demand any change in the judgment.
For the reasons assigned, the judgment appealed from is affirmed at the cost of appellant.