**99 So.2d 103**

The NATIONAL SUPPLY COMPANY

v.

George BAILLIO.

No. 43209.

Jan. 6, 1958.

Jones, Kimball, Harper, Tete & Wetherill, Lake Charles, for plaintiff-appellee.

Kaufman, Anderson, Leithead & Scott, Lake Charles, for defendant-appellant.

SIMON, Justice.

The National Supply Company, a Pennsylvania Corporation authorized to do business in Louisiana, sued to recover from George Baillio an indebtedness due to plaintiff by Bayou Drilling Company, Inc., of Houston, Texas, in the sum of $3,671.23 with 6% per annum interest from July 30, 1955, plus reasonable attorney's fees, to be fixed at 25% of the main demand.

Baillio was president and principal stockholder of Bayou Drilling Company, Inc., for whom he executed a written guaranty dated August 27, 1952 wherein he agreed to pay

to plaintiff any and all indebtedness owing or to thereafter become owing to plaintiff by the Bayou Drilling Company, Inc., for an amount not exceeding $7,500 which may exist at any one time. He also agreed to pay all costs and expenses, including reasonable attorney's fees, that may be incurred by plaintiff in any suit or action brought against Bayou Drilling Company, Inc., or himself to enforce payment of the indebtedness guaranteed thereby.

Acting under said guaranty agreement plaintiff sold and delivered certain drilling equipment, supplies and materials to Bayou Drilling Company, Inc. between the dates of December 5, 1953 and July 30, 1955, the balance indebtedness for said supplies amounting to $3,671.23, the sum sued for herein.

After filing exceptions of vagueness and nonjoinder which were in due course overruled, the defendant answered denying liability and averring notice to plaintiff of the cancellation of the guaranty prior to the sales and deliveries herein sued for. Defendant further avers on information and belief that the plaintiff failed to properly credit payments made to charges arising during the guaranty period.

Judgment was rendered by the learned trial judge in favor of plaintiff in the principal sum of $2,457.30 with interest at the rate of 5% from judicial demand until paid, attorney's fees in the sum of 10% of the aggregate of principal and interest, to-

gether with all costs, but denied recovery for items totalling $1,092.20 representing sales and deliveries originally billed to Fortune Oil Company, assigning as his reason that the guaranty agreement did not cover credit sales to parties other than Bayou Drilling Company, Inc. From this judgment defendant appealed. Plaintiff answered the appeal and seeks an amendment of said judgment to have the award increased to the full sum originally sued for plus interest at the rate of 6% per annum from judicial demand until paid, plus attorney's fees in the sum of 25% of the aggregate amount of the principal and interest, and all costs of court, and as thus amended, the judgment of the lower court herein be affirmed. On appeal plaintiff has abandoned its demand for 6% interest, and claims only the legal interest of 5% per annum from date of judicial demand.

Defendant concedes that generally speaking evidence consisting of copies of invoices and sales orders, which in this instance were admitted in evidence over his objection in proof of the alleged account and indebtedness herein sued for, gives rise to a prima facie assumption of the correctness of the said indebtedness. However, defendant contends that such evidence giving rise to such prima facie presumption is not under our jurisprudence admissible as against guarantors. He also contends that if proper credits showing payments made by the Bayou Drilling

Company, Inc., upon charges covered by the guaranty had been allowed the indebtedness herein sued on would have been discharged and that accordingly he could not be held liable therefor as guarantor or otherwise. In the alternative, he further contends that should the indebtedness sued for be held to be sufficiently proved that he, having canceled and revoked the guaranty agreement prior to the incurrence of the debt, is relieved from liability therefor.

During the presentation of plaintiff's case in chief the defendant objected to the introduction of testimony by members of the credit department of plaintiff which consisted of the identification of statements of account, invoices and sales order slips on the ground that it had not been established that Bayou Drilling Company, Inc., authorized the charges shown on said documents, or that the charges represented merchandise actually sold and delivered to some one authorized to purchase and receive it on behalf of the said drilling company. The objection was overruled; and we think correctly so. The witness, Dean H. Radle, a credit clerk in plaintiff's employ for a period of over ten years, testified that he had personal knowledge of the account of the Bayou Drilling Company, Inc.; that the ledger sheets representing this account were kept in the Tulsa office of plaintiff in the regular course of business; that all charges and credits were shown therein; that the account had a zero balance on November 12, 1953; that the charges after said date began on November 18, 1953; that the ledger sheets covering the account of the Bayou Drilling Company, Inc., from November 12, 1953 to the date suit was filed on September 7, 1955 reflected a true and correct statement of the account and that all credits had been properly entered thereon. In addition to this uncontradicted testimony sales orders and invoices covering each of the items for which payment had not been received were offered in evidence in order to show delivery and receipt thereof and notice of the then status of the account on the date of each sale. The correctness of this evidence was not refuted.

Leslie E. Minor, the chief clerk of plaintiff's credit department in Houston, Texas, testified that monthly statements were mailed to Bayou Drilling Company, Inc., and that at no time were there any objections made to their correctness. Mr. Minor further testified that he personally called at the office of Bayou Drilling Company, Inc. on many occasions, requesting payment of the delinquent account during and after January 1954, and that again no one made any objection to the correctness thereof. But on the contrary, he testified that the defendant on these several occasions solicited his aid in obtaining payment from the drilling company and thereby relieve him of any liability. It appears that to this end several months

of grace were allowed, without avail, and plaintiff then made demand upon the defendant alone as guarantor for payments.

LSA–C.C. art. 2277 provides as follows: "All agreements relative to movable property, and all contracts for the payment of money, where the value does not exceed five hundred dollars, which are not reduced to writing, may be proved by any other competent evidence; such contracts or agreements, above five hundred dollars in value, must be proved at least by one credible witness, and other corroborating circumstances."

In the case of Horton v. Haralson, 130 La. 100, 57 So. 643, 644, we considered whether certain accounts were sustained by sufficient proof and observed that: "They were proved up in the usual manner, and witnesses, doubtless, refreshed their memories from the books, and the general trend of the business, and showed that the goods had been sold and delivered. It was not necessary to prove the actual delivery of each item of the different accounts as that is impossible. The sales were proven and everything combined in showing delivery. The testimony made out at least prima facie proof, and it was then for the defendants to prove wherein the testimony was not sufficient for the purpose offered." See also Louisiana Abstract & Title Guarantee Co. v. Xeter Realty, Limited, 156 La. 1019, 101 So. 402, and Ritchie Grocer Co. v. Dean, 182 La. 518, 162 So. 62.

In the case of Harnischfeger Corporation v. C. W. Greeson & Co., 221 La. 179, 59 So.2d 113, we found sufficient corroboration of plaintiff's witnesses to satisfy the requirements of LSA–C.C. art. 2277 by a showing that monthly statements had been sent out and never objected to; that, on personal contact defendant did not deny correctness of the account; and that defendant offered no testimony to contradict plaintiff's witnesses who testified that the account was due, owing and unpaid.

■ The defendant contends however that these presumptions are not binding against a guarantor and that therefore the proof of the account herein is not sufficient to sustain liability against him as such. In support of this contention he relies on Cook-Douglas Co., Inc., v. Prudhomme, 13 La.App. 37, 127 So. 104; Shreveport Laundries, Inc., v. Sherman, La.App., 7 So. 2d 433, and Continental Ins. Co. v. Prevost, La.App., 154 So. 671. We deem these cases to be inapposite to the circumstances which are controlling here. It is significant to note that in each of the said cases relied upon by the defendant the existence, nature and scope of the guaranty was at issue; whereas in the instant case the existence and scope of the guaranty was admitted by the defendant. We further observe that in these cases the court demanded strict proof as to the existence and scope of the guaranty, but nowhere therein is it shown that the requirement of the proof of the indebted-

ness is any different against the guarantor than it is against the purchaser, once it has been established that the guaranty agreement covers the dealings had thereunder.

█ In a further effort to refute evidence of the indebtedness the defendant contended that he had no personal knowledge of the transactions herein sued on and that his inability to obtain the books and records of Bayou Drilling Company, Inc., or the testimony of its manager, Mr. Martin L. Harris, placed him at a disadvantage. To offset this complaint, the major part of the case having been heard on May 9, 1955, the lower court granted defendant's motion ordering a further hearing to be resumed on June 12, 1956, and thus afforded him the opportunity to inspect the corporate records of Bayou Drilling Company, Inc., and to obtain the testimony of Martin L. Harris. On June 12, 1956 defendant offered no further evidence except his testimony that he was unable to obtain the complete set of books of Bayou Drilling Company, Inc. It is significant that the defendant made no attempt during this delay to obtain the testimony of Harris or offered any explanation of the latter's absence. The record does not indicate that any deposition was taken or what facts the defendant intended to prove through the testimony of Harris or the corporate records. Defendant's plea of lack of knowledge of the contents of the corporate books is unavail-

ing in that the guaranty stipulated a waiver on his part of all notices or demands in connection with said account.

█ It is significant that during the entire period the account was accumulating, from November 18, 1953 to the date suit was filed, September 7, 1955, we fail to find any substantive evidence indicating any objections by the defendant to being furnished monthly statements or why he failed to object to their correctness or his liability thereon. It appears that the repeated demands for payment were seemingly ignored, thus making applicable the principles that where an account is rendered and no objection thereto is made within a reasonable time there is at least prima facie evidence that the account as rendered is correct. Gilbert v. Tullman, La.App., 28 So.2d 134; Ritchie Grocer Co. v. Dean, supra.

Defendant contends that the credits made on this account exceeded the debits. An examination of the record convinces us of the correctness of the conclusion reached by the trial judge on this question of fact that the plaintiff has established the entire account in detail, including an identification of the ledger sheets which were introduced in evidence and which show total charges and credits leaving a balance allegedly due of $3,671.23, the amount sued for herein. An examination of the record does not justify a disturbance of this conclusion of fact.

However, we cannot agree with the conclusion reached by the court below that under the terms of his written guaranty the defendant is not liable for those items of material sold to and debited in the name of Fortune Oil Company but delivered to the Bayou Drilling Company, Inc. The record discloses that at the time of these sales to and in the name of Fortune Oil Company plaintiff had suspended the credit of Bayou Drilling Company, Inc., as a result of outstanding delinquencies in its account. As an accommodation to the Bayou Drilling Company, Inc., Fortune Oil Company authorized plaintiff to deliver to the Bayou Drilling Company, Inc., but to charge and debit same to the account of Fortune Oil Company. This was purely a temporary arrangement demanded by the exigencies then prevailing. It further appears that when the credit of Bayou Drilling Company, Inc., was reinstated its representative authorized the transfer of said charges and debits from the account of Fortune Oil Company to the account of Bayou Drilling Company, Inc. These items representing an indebtedness of $1,092.20 are shown to have been delivered to and received by the Bayou Drilling Company, though debited to the account of Fortune Oil Company as a means of business convenience only. Under such circumstances we conclude that this indebtedness can only be regarded as one incurred by Bayou Drilling Company, Inc., the payment of which was guaranteed by the defendant under his guaranty agreement and for which he is responsible.

Defendant's efforts to avoid liability on the ground that the guaranty was orally cancelled is unavailing. He testified that he orally cancelled his guaranty during the period September-October, 1953 upon receiving a statement showing the account to be approximately $10,000. On the other hand, Mr. Minor testified that the guaranty was not cancelled until about July or August of 1954, a date subsequent to the time the plaintiff had discontinued selling supplies and materials to the Bayou Drilling Company, Inc. Further, the trial judge observed in his reasons for judgment that defendant was uncertain as to the date he cancelled his guaranty and that in the absence of a written instruction of cancellation by the defendant to plaintiff he, the trial judge, concluded that the guaranty was still in existence when the items sued on were sold and delivered to Bayou Drilling Company, Inc. A review of the testimony on this contention leaves us with no doubt as to the correctness of the trial court's conclusion.

The guaranty agreement further provided that the guarantor would also pay all costs and expenses, including reasonable attorney's fees, that may be incurred by plaintiff in any suit or action brought by it against either the Bayou Drilling Company, Inc. or the defendant. The lower court made an award of 10% of the aggregate

of principal and interest and on this appeal the plaintiff prays for an increase in said award to 25%. We will not alter the amount awarded, the trial judge having been in a more advantageous position to gage the measure of services rendered by the attorneys in the prosecution of this cause as well as the adequacy of the award.

Accordingly, for the reasons assigned, the judgment of the district court is amended so as to increase the award from $2,457.30 to $3,671.23 in favor of plaintiff, the National Supply Company, and against the defendant, George Baillio, and as amended, the said judgment is affirmed.

FOURNET, C. J., absent.